**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00579-RJC-DCK**

| | |
|---|---|
| **TONIA BROOKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| **RECEIVABLES PERFORMANCE** ) | |
| **MANAGEMENT LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the Motion for Summary Judgment filed by Receivables Performance Management LLC ("RPM"), Doc. No. 10, and the Court's previous Order providing notice of its intent to grant summary judgment to Tonia Brooks under Federal Rule of Civil Procedure 56(f)(1), Doc. No. 18; *see* Fed. R. Civ. P. 56(f)(1) (authorizing courts to "grant summary judgment for a nonmovant" after "giving notice and a reasonable time to respond"). As explained below, since Brooks has failed to show a concrete injury "with the manner and degree of evidence required" at the summary-judgment stage, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021), RPM's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

Brooks claims that RPM, a debt collector, sent her a collection letter that made a "false and misleading representation" in violation of the Fair Debt Collection Practices Act ("FDCPA"). Compl. ¶ 43, Doc. No. 1; *see* 15 U.S.C. § 1692e (prohibiting debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt").

After she incurred a debt of $1,754.65 to AT&T, Brooks received a letter from RPM that

exhorted her to "**ACT NOW AND SAVE MONEY**." RPM Letter, Doc. No. 1-2 (emphasis in original). The letter said that Brooks's debt would "be settled for less than the full original balance if [her] payment of $965.06 [were] received on or before 08-24-21." *Id.* It explained that $965.06 "represents 55% of the current balance," and it said that Brooks's "account [would] be considered **'Settled in Full'** after [RPM] post[ed] [her] payment." *Id.* (emphasis in original). The letter stated that "[p]ayment will cause future collection efforts to cease." *Id.* But it also said that, even after a partial payment, "a residual balance will remain with AT&T." *Id.*

RPM moved for summary judgment, Doc. No. 10, drawing no cross-motion from Brooks. On April 19, 2023, the Court held a hearing on RPM's motion. Afterward, the Court notified the parties of its intent to grant summary judgment to Brooks under Federal Rule of Civil Procedure 56(f)(1). Doc. No. 18.

The Court issued its notification order on Monday, April 24, 2023. Doc. No. 18. It gave the parties an opportunity to address one issue: whether "RPM's representation that Brooks would save money by making the partial payment was false under 15 U.S.C. § 1692e." *Id.* at 2. The Court explained that, "[s]ince Brooks's residual balance would remain," it is "unclear how the letter's purported settlement offer would allow Brooks to 'save money.'" *Id.* The parties were given the opportunity to address the issue by Friday, April 28, 2023. *Id.* at 3.

Both parties filed responses on that day. Doc. Nos. 20, 21. Since RPM's response raised numerous issues that had not been raised in its summary-judgment brief or in the Court's Order (such as Brooks's ability to establish Article III standing), the Court entered a text-only order on May 2, 2023 allowing Brooks to respond to the newly raised issues by May 8, 2023. The Court indicated that if Brooks chose to respond, she should address whether she has Article III standing under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Brooks filed a response on May 8,

2

2023. Doc. No. 22.

II.     **STANDARD OF REVIEW**

A court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The moving party may carry its burden by showing "an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely on "the mere allegations or denials of [its] pleading" to defeat a motion for summary judgment. *Id.* Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict" in its favor. *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, a court must view the evidence and any inferences from it in the light most favorable to the nonmoving party. *Sylvia*, 48 F.3d at 817. The

3

mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 249. And if the nonmoving party's evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249–50.

### III. DISCUSSION

To establish Article III standing, the plaintiff must show that she suffered an "injury in fact" that is "fairly traceable" to the defendant and is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Given these requirements, a "bare procedural violation[]" is insufficient. *Id.* at 2213 (quoting *Spokeo*, 578 U.S. at 341).

Standing must be shown "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 2208 (quoting *Lujan*, 504 U.S. at 561); *see also Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) ("[T]he procedural posture of the case dictates the plaintiff's burden as to standing."). Thus, in response to a motion for summary judgment, "the plaintiff can no longer rest on . . . mere allegations." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted); *see also Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (stating that "[a] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [her] pleadings" (internal quotation marks omitted)). Instead, the plaintiff must satisfy the standing requirements with "specific facts" that are "set forth by affidavit or other evidence." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). "[C]onclusory allegations" are not enough. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)); *see also Bouchat*, 346 F.3d at 522 (explaining that "neither unsupported

4

speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment" (citations, alterations, and internal quotation marks omitted)).

In support of her argument that she has Article III standing, Brooks attached an affidavit to the last response she filed. *See* Brooks Aff., Doc. No. 22-1. That affidavit offers two new theories about how she was injured, neither of which appears in her Complaint. For a litany of reasons, described below, Brooks's recently filed affidavit fails to establish Article III standing. Thus, even if RPM's settlement representations were false under the FDCPA, Brooks has shown only a "bare procedural violation[], divorced from any concrete harm." *TransUnion*, 141 S. Ct. at 2213 (quoting *Spokeo*, 578 U.S. at 341).

### A. The Complaint Cannot Be Amended by Summary-Judgment Filings

Brooks's Complaint alleges that RPM's letter "confused and misled [her] to her detriment." Compl. ¶ 28. Specifically, the Complaint says that Brooks "expended time, money, and effort in determining the proper course of action." *Id.* ¶ 29.

That theory was abandoned at the summary-judgment hearing. When the Court asked how Brooks "expended time[,] money[,] and effort in determining the proper course of action," Brooks's counsel responded that he was "not exactly sure about that." Hr'g Tr. 13:17–19 (April 19, 2023) (real-time, unedited transcript). As reflected by counsel's answer, the record is devoid of any evidence that Brooks suffered the injuries identified in her Complaint.[1]

Brooks's affidavit offers two new theories. It says the letter "caused [Brooks] a great deal

---

[1] When asked whether he would show a jury any evidence other than RPM's letter, Brooks's counsel replied, "I don't have any other evidence." Hr'g Tr. 12:3 (April 19, 2023) (real-time, unedited transcript).

5

of stress and sleepless nights as [she] worried about how best to manage [her] finances without the ability to settle the debt for a significantly reduced sum." Brooks Aff. ¶ 12; *see also* Pl.'s Reply 5, Doc. No. 22 (describing Brooks's "allegations of emotional distress"). Formulating a second new theory, Brooks says that her "fail[ure] to accept the settlement offer . . . depriv[ed] her of the opportunity to settle the debt for less than the full amount owed," resulting in "pecuniary harm." Pl.'s Reply 1–2 (emphasis and capitalization omitted).

Brooks cannot assert these new theories at this late stage. "A plaintiff may [not] plead one theory and one set of facts in [her] complaint, and then proceed to trial on an entirely different theory supported by entirely different facts." *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 154 (4th Cir. 2020). Such a "wholesale change" is "tantamount to a constructive amendment of a complaint, and 'the district court has discretion to deny the *de facto* amendment and to refuse to consider the new factual claims.'" *Id.* (quoting *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017)); *see also Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).

Additionally, a complaint is meant to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted). But Brooks's Complaint never put RPM on notice that it might need to investigate Brooks's alleged emotional distress. Nor did it give RPM a chance to address Brooks's perplexing claim that she was injured by her own refusal to accept a settlement offer that she herself said "appear[ed]" to be "not really genuine" and like "a mirage." Brooks Aff. ¶ 9. RPM was thus prejudiced by Brooks's last-minute change of theory. *See Faulconer*, 808 F. App'x at

6

154 ("[A]llowing such a constructive amendment at summary judgment may unfairly prejudice the defendant, by depriving it of the notice it needs to conduct effective discovery."); *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) ("We conclude that the district court did not err in refusing to consider the new argument as an impermissible attempt to constructively amend the complaint. Because a complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations, constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant." (internal quotation marks omitted)).

Because Brooks "may not, in opposition to a motion for summary judgment, . . . amend [her] complaint by adding a new theory of damages," *3PD, Inc. v. U.S. Transp. Corp.*, 2015 WL 4249408, at *4 (D. Md. July 9, 2015), the Court will "deny the *de facto* amendment and . . . refuse to consider the new factual claims," *Faulconer*, 808 F. App'x at 154. And since Brooks provides no evidence in support of the injuries alleged in her Complaint, she has failed to establish her standing "with the manner and degree of evidence required at the [summary-judgment] stage[]." *TransUnion*, 141 S. Ct. at 2208.

### B. If the New Theories Were Considered, They Would Fail

Even if the Court considered the affidavit's new theories, they would not suffice for Article III standing.

#### 1. The Conclusory Emotional-Distress Allegations Do Not Establish Standing

One sentence in Brooks's affidavit describes her emotional distress. She says she experienced "a great deal of stress and sleepless nights as [she] worried about how best to manage [her] finances without the ability to settle the debt for a significantly reduced sum." Brooks Aff.

7

¶ 12. Her stress and sleeplessness stemmed from the "worr[y]" she had about her "[in]ability to settle the debt for a significantly reduced sum." *Id.*

But Brooks offers no reason why RPM's letter—on its own—would cause that worry or its attendant stress and sleeplessness. RPM's letter did not create Brooks's debt to AT&T.[2] Nor does she claim that the letter created the worry she describes. Her conclusory allegation of emotional distress, offered without explaining how RPM's letter caused the worry and its symptoms, fails to establish Article III standing. *See Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) ("Being informed of an outstanding debt can sometimes be a stressful experience, but federal courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act."); *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 464 (8th Cir. 2022) (stating that the plaintiff, "who had avoided paying this debt for more than ten years," made "no showing that his alleged 'negative emotions' were caused by" the defendant's conduct); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021) ("As to her emotional distress, [the plaintiff] offers no reason why the delayed recordation would cause great stress, mental anguish, anxiety, and distress. A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." (internal quotation marks and citation omitted)).[3]

---

[2] According to Brooks, the AT&T debt existed "prior to August 11, 2021," Compl. at 6, ¶ 22, Doc. No. 1, the date of the letter, RPM Letter, Doc. No. 1-2.

[3] Though *Maddox v. Bank of New York Mellon Trust Co., N.A.* was decided at the motion-to-dismiss stage, its holding—that "perfunctory allegation[s] of emotional distress" do not establish Article III standing, 19 F.4th 58, 66 (2d Cir. 2021)—has been applied at the summary-judgment stage. *See, e.g.*, *Adler v. Penn Credit Corp.*, 2022 WL 744031, at *9 (S.D.N.Y. March 11, 2022) (granting summary judgment to the defendant because the plaintiff's assertions of "mental or emotional anguish," made in a declaration and during his deposition, were "perfunctory" and thus

Brooks's "conclusory allegation[]" of emotional distress—a sentence in all—amounts to a "'mere . . . scintilla of evidence' in favor of the non-movant's position," which "is insufficient to withstand [RPM's] summary judgment motion." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (first quoting *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020); then quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see also Reimer v. LexisNexis Risk Sols., Inc.*, 2022 WL 4227231, at *8 (E.D. Va. Sept. 13, 2022) (ruling that the plaintiff's "[t]hreadbare allegations" that he "felt 'greatly distressed,' 'very concerned,' and suffered 'emotional distress and mental anguish'" did not "confer standing"); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) ("Plaintiff does allege that he suffered 'mental and emotional pain,' however such conclusory assertions do not confer standing. Although there may be instances where emotional harm satisfies the Article III injury-in-fact requirement, such claims must be supported by sufficient allegations." (citation omitted)).[4]

Moreover, Brooks's affidavit does not satisfy the Fourth Circuit's evidentiary standard for claims of emotional distress. The Court has "warned that '[n]ot only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims.'" *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (alteration in original) (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996)). The Court has therefore "required a

---

insufficient "to establish [an] injury-in-fact at th[e] [summary-judgment] stage of the litigation" (citing *Maddox*, 19 F.4th at 66)); *Schmelczer v. Penn Credit Corp.*, 2022 WL 862254, at *7 (S.D.N.Y. March 23, 2022) (granting summary judgment to the defendant because the plaintiff's claims that a collection letter "caused [him] to become 'confused' and 'concerned'" were "insufficient to establish concrete injury sufficient to confer Article III standing" (citing *Maddox*, 19 F.4th at 66)).

[4] Since Brooks does not explain how RPM's letter caused the worry described in her affidavit, she also fails to show that her injuries are "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

9

plaintiff to 'reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements.'" *Id.* (alteration in original) (quoting *Price*, 93 F.3d at 1250); *see also id.* ("[W]e have distinguished between plaintiff testimony that amounts only to 'conclusory statements' and plaintiff testimony that 'sufficiently articulate[s]' true 'demonstrable emotional distress.'" (second alteration in original)); *Guthrie v. PHH Mortg. Corp.*, 2022 WL 706923, at *9 (E.D.N.C. March 4, 2022) (granting summary judgment to the defendant because the plaintiff's affidavit offered only "conclusory and vague statements regarding his emotional state" (citing *Sloane*, 510 F.3d at 503)). Yet here, a conclusory statement is all that Brooks offers.

Worse still, courts have held that emotional distress is not a concrete injury in FDCPA cases. The Seventh Circuit has issued a "bevy of recent decisions on FDCPA standing." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021). Those cases have held that "[p]sychological states induced by a debt collector's letter" do not satisfy "the concreteness requirement." *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022). The Court has addressed specific manifestations of emotional distress. "[A]nxiety and embarrassment are not injuries in fact." *Wadsworth*, 12 F.4th at 668. "[S]tress" that "follow[s] an FDCPA violation" has also been "expressly rejected." *Id.* So too has "[a] plaintiff's 'state of confusion.'" *Id.* If a court were to hold otherwise, "then everyone would have standing to litigate about everything." *Id.* (quoting *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020)). Other courts have adopted positions like the Seventh Circuit's. *See, e.g.*, *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (holding, in an FDCPA case, that the plaintiff's "allegations of intangible injury—fear of answering the telephone, nervousness, restlessness, irritability, amongst other negative emotions—fall short of cognizable injury" (internal quotation marks omitted)); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021)

10

(holding that "bare allegations of confusion and anxiety do not qualify as injuries in fact" in FDCPA cases); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022) (holding that "the state of confusion, absent more, is not a concrete injury" caused by an FDCPA violation); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 830 (10th Cir. 2022) (holding that "confusion and misunderstanding are insufficient to confer standing" for FDCPA claims); *see also Graves v. Foulger-Pratt Cos., LLC*, 2023 WL 2720795, at *9 (E.D. Va. March 30, 2023) (dismissing an FDCPA claim because "any emotional distress" experienced by the plaintiff was "insufficient to confer standing" (citing *Pierre*, 29 F.4th at 939)).

For all these reasons, Brooks's sentence-length assertion of emotional distress—even if it were considered by the Court at this late stage—would fail to establish a concrete injury.

### 2. The Financial-Harm Allegation Is Inconsistent and Unsupported

Brooks also makes the puzzling claim that she was injured when she chose to reject RPM's settlement offer, even though the offer appeared to be "not really genuine." Brooks Aff. ¶ 9. When she "fail[ed] to accept the settlement offer," she says she was deprived of "the opportunity to settle the debt for less than the full amount owed," which caused her "pecuniary harm." Pl.'s Reply 1–2, Doc. No. 22 (emphasis and capitalization omitted).

That allegation contradicts the core contention of Brooks's case. The basis of her suit is that RPM's letter gave her no real way to save money:

> The letter deceives and misleads the consumer by implying that paying 55% would achieve results akin to a settlement offer, when in reality the Defendant's offer contains no significant benefits and is unclear [as] to what the benefits of the settlement would actually be . . . .

Compl. at 7, ¶ 18. The letter told Brooks that her "account [would] be considered 'Settled in Full'" if she made a partial payment. *Id.* at 7–8, ¶ 24; *see* RPM Letter, Doc. No. 1-2. In her Complaint,

11

Brooks described that representation as "entirely misleading and deceptive as the account will not be 'settled in full,' rather the balance actually remains as is stated in the letter." Compl. at 8, ¶ 25. In its previous Order, the Court indicated that Brooks is probably right in arguing that the letter falsely offered her an opportunity to save money. Doc. No. 18 at 1–2. Yet in response to RPM's challenge to her standing, Brooks now describes the letter as a bona fide settlement offer that would have helped her financially. Brooks is estopped from using this "intentional self-contradiction" as "a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir. 1982) (quoting *Scarano v. Cent. R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)); *see also Scarano*, 203 F.2d at 513 ("[A] party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits. . . . Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate.").

Even if Brooks were not estopped from reversing course, she has failed to prove, "with the manner and degree of evidence required at the [summary-judgment] stage[]," that she declined a genuine settlement opportunity. *TransUnion*, 141 S. Ct. at 2208. She offers no evidence that the letter made a bona fide settlement offer. *Cf.* Compl. at 7, ¶ 23 (alleging that Brooks was unsure whether the letter offered "an actual settlement or not"); Brooks Aff. ¶ 9 (stating that the "language in the [l]etter made it appear as though the settlement offer was a mirage and not really genuine"). She accused RPM of this same failure in her initial response to RPM's summary-judgment motion:

> To argue successfully that the letter merely explains an aphorism in the industry that once collection accounts are settled, the remaining balance is returned back to the creditor as a matter of course, Defendant would have had to develop, through testimony, affidavits or documentary evidence exchanged through discovery, that its policy or practice was to return the remaining balance to the original creditor,

12

> here, AT&T, purely as a matter of business administration, but that the account would have been considered settled and the remaining balance discharged. But no such evidence exists. At the summary judgment stage, this is a critical flaw . . . .

Pl.'s Mem. Opp'n 2, Doc. No. 15.[5] Like RPM, Brooks has "presented no evidence" that she rejected a real opportunity to settle her debt. *TransUnion*, 141 S. Ct. at 2213. She accordingly shows no injury that is cognizable at this stage of the litigation.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. RPM's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**.
2. The Clerk is directed to close this case.

Signed: June 27, 2023

Robert J. Conrad, Jr.
United States District Judge

---

[5] *See also* Pl.'s Mem. Opp'n 12–13, Doc. No. 15 ("Defendant argues that the statement, 'Payment will cause future collection efforts to cease and a residual balance will remain with AT&T,' merely reflects a truism in the debt collection industry that once settlements are made, the previously assigned debt is then returned back to the original creditor for administration purposes, but that the debt is considered 'settled' with a zero balance. To prove this fact, Defendant would had to have introduced relevant testimony from a competent witness familiar with the practices and procedures of Defendant, an employee for example, who could reliably testify that that is indeed what happens to collection accounts when settlement offers are accepted. Alternatively, Defendant could have offered documentary evidence showing same. Defendant has done neither, and cannot do so now because the discovery deadline has passed.").